Shiloh S. Hernandez
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 204-4861
hernandez@westernlaw.org

Laura H. King
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 204-4852
king@westernlaw.org

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MONTANA ENVIRONMENTAL INFORMATION CENTER, | Case No. 9:15-cv-106-DWM |
|        Plaintiff, | PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENOR'S EMERGENCY MOTION TO AMEND JUDGMENT, MOTION FOR REMEDIES HEARING, AND MOTION TO STAY INJUNCTION PENDING REMEDIES HEARING |
|       vs. | |
| U.S. OFFICE OF SURFACE MINING, et al., | |
|       Defendants. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. ii

TABLE OF AUTHORITIES ........................................................ iii

INTRODUCTION ....................................................................... 1

ARGUMENT .............................................................................. 3

I.     Standard of Review ........................................................... 3

II.    Signal Peak's Motion to Amend Has No Merit. ............................................... 4

       A.    Signal Peak May Not Use a Motion to Amend the Judgment to Raise a Remedies Argument that It Neglected to Raise Prior to Entry of Judgment. ................................................ 4

       B.    This Court's Decision to Vacate and Set Aside Federal Defendants' Unlawful Action Was Neither Error Nor Manifestly Unjust. ................................................ 6

       C.    This Court's Injunction, Abundantly Warranted by the Facts in the Record and the Facts of This Case, Was Neither Clear Error Nor Manifestly Unjust. .......................................... 12

III.   Because Signal Peak's Motion to Amend Should Be Denied, Its Request for a Stay and Additional Remedies Briefing Should Also Be Denied. ................................................ 19

CONCLUSION .......................................................................... 19

CERTIFICATE OF SERVICE ................................................... 21

CERTIFICATE OF COMPLIANCE ......................................... 21

# TABLE OF AUTHORITIES

## Cases

*Alliance for the Wild Rockies v. Bradford*,
    No. cv-09-160-M-DWM, 2010 WL 11468411 (D. Mont. Aug. 5, 2010)7, 12, 15, 18

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ................................................................16

*Amoco Prod. Co. v. Vill. of Gambell*,
    480 U.S. 531 (1987) .............................................................................13

*Becerra v. U.S. Dep't of Interior*,
    No. 17-cv-2376-EDL, 2017 WL 3891678 (N.D. Cal. Aug. 30, 2017) .................8

*Cal. Cmtys. Against Toxics v. EPA*,
    688 F.3d 989 (9th Cir. 2012) ..............................................................7, 8

*Calvert Cliffs v. Atomic Energy Comm'n*,
    449 F.2d 1109 (D.C. Cir. 1971) .........................................................17

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S. 40 (1971) ...............................................................................6

*Colorado Wild v. U.S. Forest Serv.*,
    523 F. Supp. 2d 1213 (D. Colo. 2007) ................................................18

*Davis v. Mineta*,
    302 F.3d 1104 (10th Cir. 2002) ..................................................... 9, 18

*Desert Citizens Against Pollution v. Bisson*,
    231 F.3d 1172 (9th Cir. 2000) ............................................................9

*Diné Citizens Against Ruining Our Environment v. OSM*,
    No. 12-cv-1275-JLK, 2015 WL 1593995 (D. Colo. Apr. 6, 2015) .......... 9, 11, 17

*Great Basin Res. Watch v. Bureau of Land Mgmt.*,
    844 F.3d 1095 (9th Cir. 2016) ..........................................................5, 7

Pl.'s Resp. to Signal Peak's Mot. to Amend J.
MEIC v. OSM, 15-cv-106-DWM

*High Country Conservation Advocates v. U.S. Forest Serv.*,
    67 F. Supp. 3d 1262 (D. Colo. 2014) ....................................................................12

*Humane Soc'y of U.S. v. Locke*,
    626 F.3d 1040 (9th Cir. 2010)...........................................................................5, 7

*Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin.*,
    109 F. Supp. 3d 1238 (N.D. Cal. 2015) .................................................................6

*Kona Enters., Inc. v. Estate of Bishop*,
    229 F.3d 877 (9th Cir. 2000)........................................................................ 3, 4, 6

*League of Wilderness Defenders v. Connaughton*,
    752 F.3d 755 (9th Cir. 2014) ...............................................................................10

*McDowell v. Calderon*,
    197 F.3d 1253 (9th Cir. 1999) ...............................................................................3

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) ...................................................................................... 13, 18

*Mont. Wilderness Ass'n v. Fry*,
    408 F. Supp. 2d 1032 (D. Mont. 2006) .................................................... 10, 15, 17

*NRDC v. EPA*,
    489 F.3d 1364 (D.C. Cir. 2007) .............................................................................8

*Ohio Valley Envtl. Coal. v. U.S. Army Corps of Eng'rs*,
    528 F. Supp. 2d 625 (S.D.W. Va. 2007) ...............................................................13

*Or. Natural Desert Ass'n v. BLM*,
    625 F.3d 1092 (9th Cir. 2010)..............................................................................17

*Pollinator Stewardship Council v. EPA*,
    806 F.3d 520 (9th Cir. 2015)..............................................................................7, 8

*S.E.C. v. Pattison*,
    No. C-08-4238 EMC, 2011 WL 2293195 (N.D. Cal. June 9, 2011) ....................4

*Sch. Dist. No. 1J v. ACandS, Inc.*,
    5 F.3d 1255 (9th Cir.1993)......................................................................................4

iv

Pl.'s Resp. to Signal Peak's Mot. to Amend J.
MEIC v. OSM, 15-cv-106-DWM

*Seattle Audubon Soc'y v. Evans*,
   771 F. Supp. 2d 1081 (W.D. Wash. 1991) ...........................................................15

*Sierra Club v. Bosworth*,
   510 F.3d 1016 (9th Cir. 2007) ............................................................................17

*Sierra Club v. FERC*,
   867 F.3d 1357 (D.C. Cir. 2017) ...........................................................................5

*Sierra Club v. U.S. Army Corps of Eng'rs*,
   645 F.3d 978 (8th Cir. 2011) .................................................................. 9, 12, 16

*Sierra Club v. U.S. Dep't of Agric.*,
   841 F. Supp. 2d 349 (D.D.C. 2012) ....................................................................11

*Smith v. Clark County Sch. Dist.*,
   727 F.3d 950 (9th Cir. 2013) ................................................................................4

*Swan View Coal. v. Weber*,
   52 F. Supp. 3d 1160 (D. Mont. 2014) ..................................................................9

*United States v. Dieter*,
   429 U.S. 6 (1976) ..................................................................................................3

*United States v. Oakland Cannabis Buyers' Coop.*,
   532 U.S. 483 (2001) ...........................................................................................13

**Statutes**

30 U.S.C. § 1202 .......................................................................................................10

42 U.S.C. § 13571 .....................................................................................................10

5 U.S.C. § 706 ................................................................................................ 2, 5, 6, 7

Fed. R. Civ. P. 59 ............................................................................................. passim

Fed. R. Evid. 201 .................................................................................................. 2, 11

Fed. R. Evid. 801 .....................................................................................................11

Pl.'s Resp. to Signal Peak's Mot. to Amend J.
MEIC v. OSM, 15-cv-106-DWM

**Rules and Regulations**

40 C.F.R. § 1500.1 ...................................................................................17

40 C.F.R. § 1506.1 ....................................................................... 16, 17, 18

**Other Authorities**

11 Wright et al., Federal Practice and Procedure, § 2810.1 (2d ed. 1995)............3, 4

Pl.'s Resp. to Signal Peak's Mot. to Amend J.
MEIC v. OSM, 15-cv-106-DWM

## INTRODUCTION

After neglecting to present any evidence regarding remedy during dispositive motions briefing, Signal Peak Energy ("Signal Peak") now asks this Court for a second bite at the proverbial apple. Federal Rule of Civil Procedure 59(e), however, does not provide an avenue for a party to raise arguments that it could have raised prior to entry of judgment. For this reason alone, the coal company's motion should be denied.

Further, the evidence before this Court supported its decision to vacate Federal Defendants' unlawful approval of the mine expansion and enjoin further mining operations in federal coal within the Amendment 3 boundary pending compliance with the National Environmental Policy Act (NEPA). Finally, consideration of the four injunction factors demonstrates that this Court's injunction was well warranted.

## FACTS

In March 2016 all parties, including Signal Peak, submitted a joint proposed case management plan. (Doc. 23.) The proposed plan did not bifurcate merits and remedies briefing. (*Id.* at 4-5.) This Court adopted the case management plan as proposed by the parties. (Doc. 24.) The plan was subsequently amended on multiple occasions. (*See* Doc. 37; Doc. 45.) At no point did Signal Peak request to bifurcate merits and remedies briefing.

1

Because merit and remedies briefing were not bifurcated, Plaintiff Montana Environmental Information Center (MEIC) requested the Court to vacate and set aside Federal Defendants' decisions in its dispositive summary judgment briefing. (Doc. 41 at 28 (requesting that "this Court . . . set aside Federal Defendants' actions"); Doc. 55 at 35 (requesting vacatur).)

Despite MEIC's express requests for vacatur—the standard remedy under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)—Signal Peak presented no argument in opposition to MEIC's request for vacatur. (*See generally* Doc. 52; Doc. 56.) Nor did Federal Defendants present any argument in opposition to Plaintiffs' requested remedy. (*See generally* Doc. 48; Doc. 58.)

This Court issued its order on summary judgment and its final judgment on August 14, vacating Federal Defendants' action and enjoining mining of federal coal within the Amendment 3 permit boundary, pending compliance with NEPA. (Doc. 60 at 64; Doc. 61 at 2.) That same day, a coal train traveling west through Montana derailed, spilling loads of coal into the Clark Fork River.[1] Twenty-eight days later, Signal Peak filed its "emergency" motion to amend this Court's

---

[1] David Erickson, *Coal Train Derails Along Clark Fork River in Western Montana*, Missoulian (Aug. 14, 2017), *available at* http://missoulian.com/news/state-and-regional/coal-train-derails-along-clark-fork-river-in-western-montana/article_10983a3a-4928-555a-b309-e49685972a74.html. The Court may, and is requested to, take judicial notice of the fact of this derailment. Fed. R. Evid. 201(b)(2), (c)(2).

Pl.'s Resp. to Signal Peak's Mot. to Amend J.
MEIC v. OSM, 15-cv-106-DWM

judgment, requesting a round of supplemental remedies briefing. (Doc. 70 at 3.)
Signal Peak appears to have been mining in federal coal at the time this Court
issued its opinion. (Doc. 74 (identifying "[c]urrent [d]evelopment [l]ocation" in
section 8).)

## ARGUMENT

### I.    Standard of Review

The Court "enjoys considerable discretion in granting or denying" a motion
to amend under Rule 59(e). *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th
Cir. 1999) (quoting 11 Wright et al., Federal Practice and Procedure, § 2810.1 (2d
ed. 1995)). However, "reconsideration of a judgment after its entry is an
extraordinary remedy which should be used sparingly," *id.*, in the interests of
finality and conservation of judicial resources. *Kona Enters., Inc. v. Estate of
Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). In these rare circumstances, Rule 59(e)
allows district courts to correct potential prejudicial errors, thereby sparing the
parties and courts unnecessary appellate litigation. *See United States v. Dieter*, 429
U.S. 6, 8 (1976).

"A district court may properly reconsider its decision if it '(1) is presented
with newly discovered evidence, (2) committed clear error or the initial decision
was manifestly unjust, or (3) if there is an intervening change in controlling law.'"

Pl.'s Resp. to Signal Peak's Mot. to Amend J.
MEIC v. OSM, 15-cv-106-DWM

*Smith v. Clark County Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *Sch. Dist. No. 1J v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993)).

"A Rule 59(e) motion may **not** be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enterprises*, 229 F.3d at 890 (emphasis in original). Further, "amendment of the judgment will be denied if it would serve no useful purpose." *S.E.C. v. Pattison*, No. C-08-4238 EMC, 2011 WL 2293195, at *2 (N.D. Cal. June 9, 2011) (quoting Wright et al., *supra* § 2810.1).

## II.    Signal Peak's Motion to Amend Has No Merit.

This Court should deny the coal company's motion because (1) it raises arguments that could and should have been raised prior to entry of judgment (but were not); (2) this Court's decision to vacate Federal Defendants' unlawful actions was warranted; and (3) this Court's decision to enjoin mining in federal coal within the Amendment 3 permit boundary was also warranted.

### A.    Signal Peak May Not Use a Motion to Amend the Judgment to Raise a Remedies Argument that It Neglected to Raise Prior to Entry of Judgment.

The fundamental flaw in Signal Peak's motion is that it attempts to raise an argument about remedy that it could have raised, but failed to raise, prior to entry of judgment. Signal Peak, together with the other parties, proposed a case management plan that did not bifurcate merits and remedy briefing. (Doc. 23 at  4-

4

5). The Court adopted the proposed plan. (Doc. 24.) Though the parties amended the briefing schedule on multiple occasions, not once did Signal Peak request separate remedies briefing. (*E.g.*, Doc. 37; Doc. 38; Doc. 45; Doc. 46.) Accordingly, MEIC moved the court to vacate Federal Defendants' approval of the mine expansion in its opening and response-reply briefs on summary judgment. (Doc. 41 at 28; Doc. 55 at 35.) Vacatur is the standard remedy for unlawful agency action, 5 U.S.C. § 706(2), and a court need not conduct any specific analysis prior vacating an agency decision premised on an unlawful NEPA analysis, *e.g.*, *Sierra Club v. FERC*, 867 F.3d 1357, 1379 (D.C. Cir. 2017) (vacating pipeline approval for NEPA violation); *accord Great Basin Res. Watch v. Bureau of Land Mgmt.*, 844 F.3d 1095, 1111 (9th Cir. 2016); *Humane Soc'y of U.S. v. Locke*, 626 F.3d 1040, 1059 (9th Cir. 2010).

Despite MEIC's requests for relief and despite the absence of separate remedies briefing, Signal Peak presented no arguments opposing MEIC's repeated requests for this Court to vacate and set aside the challenged actions. (*See generally* Doc. 52; Doc. 56.) Nor did Federal Defendants raise any arguments against vacatur. (*See generally* Doc. 48; Doc. 58.) Thus, Signal Peak's argument that "[b]efore formulating a remedy the parties must be afforded an opportunity to present arguments" is unavailing. (Doc. 70 at 6.) Signal Peak had that opportunity,

but did not take it. Accordingly, Signal Peak may not now use Rule 59(e) to take a second bite at the apple. *Kona Enterprises*, 229 F.3d at 890.

**B.    This Court's Decision to Vacate and Set Aside Federal Defendants' Unlawful Action Was Neither Error Nor Manifestly Unjust.**

Signal Peak's motion also fails because vacatur was neither erroneous nor manifestly unjust. Indeed, while Signal Peak suggests that vacatur was somehow improper, the coal company presents no authority (there is none) to support the proposition that a court is required to conduct some special analysis prior to vacating an unlawful agency action. (*See* Doc. 70 at 5-7.) This is because the express language of the APA mandates this remedy: a "reviewing court **shall** . . . hold unlawful and **set aside** agency action . . . found to be . . . arbitrary [or] capricious." 5 U.S.C. § 706(2). "In all cases agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413-14 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (quoting 5 U.S.C. § 706(2)).

"Vacatur is the standard remedy for unlawful agency decisions." *Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin.*, 109 F. Supp. 3d 1238, 1239 (N.D. Cal. 2015); *see also Pollinator Stewardship Council v. EPA*, 806

6

Pl.'s Resp. to Signal Peak's Mot. to Amend J.
MEIC v. OSM, 15-cv-106-DWM

F.3d 520, 532 (9th Cir. 2015) ("We order remand without vacatur only in 'limited circumstances.'" (quoting *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 994 (9th Cir. 2012))).[2] Courts routinely vacate unlawful agency action as a matter of course. *E.g.*, *Great Basin Res. Watch*, 844 F.3d at 1111; *Humane Soc'y of U.S.*, 626 F.3d at 1059.

Moreover, MEIC's prior briefing and this Court's order on summary judgment abundantly support vacatur. *See Alliance for the Wild Rockies v. Bradford*, No. CV-09-160-M-DWM, 2010 WL 11468411, at **2-4 (D. Mont. Aug. 5, 2010) (denying motion to amend judgment where record evidence and prior order on temporary restraining order supported permanent injunction). Despite the plain language of 5 U.S.C. § 706(2), in "limited circumstances" a court acting in equity may leave an agency's decision in place on remand. *Pollinator Stewardship Council*, 806 F.3d at 532. In making this determination, a court weighs "the seriousness of the agency's errors" against "the disruptive consequences" that may

---

[2] Contrary to Signal Peak's assertion, *California Communities Against Toxics* does not state that vacatur is "not the presumptive remedy for a NEPA violation." (Doc. 70 at 5.) First, that case did not involve a NEPA violation. Second, the court was clear that vacatur without remand is only appropriate in "limited circumstances," upon a strong showing, such as the need to avoid rolling regional "blackouts" or species extinction. 688 F.3d at 994. Again, Signal Peak did not even attempt to make such a showing during dispositive briefing (and it has made no such showing here).

result from vacatur. *Id.* at 532 (quoting *Cal. Cmtys. Against Toxics*, 688 F.3d at 992).

Here, Federal Defendants' "errors could not be more serious insofar as [they] acted unlawfully, which is sufficient reason to vacate" their decisions. *Becerra v. U.S. Dep't of Interior*, No. 17-cv-2376-EDL, 2017 WL 3891678, at *11 (N.D. Cal. Aug. 30, 2017) (quoting *NRDC v. EPA*, 489 F.3d 1364, 1374 (D.C. Cir. 2007)). The agencies' NEPA analysis failed adequately to consider the impacts associated with coal combustion and ignored most impacts from coal transportation. (Doc. 60 at 33-35, 46-47.) By doing so, the agencies ignored that the greenhouse gas emissions, alone, from the mine expansion could cause "between $277 million and $2.5 billion annually" in climate-change-related harm. (*Id.* at 59.) The agencies also ignored the dramatic and widespread harm caused by non-greenhouse gas pollution from coal combustion and the myriad impacts from and "vigorous public opposition to" coal trains. (*Id.* at 28-35, 57; Doc. 42, ¶¶ 80-108.) Ultimately, the agencies' faulty analysis improperly placed its "thumb on the scale by inflating the benefits of the [mine expansion], while minimizing its impacts." (Doc. 60 at 46.) These were "fundamental flaws," abundantly supporting vacatur. *See Pollinator Stewardship Council*, 806 F.3d at 532.

Signal Peak's purported economic injuries do not outweigh the potential harm posed by the mine expansion. Initially, Signal Peak's asserted injuries should

8

not be weighed because they are self-inflicted, resulting from the coal company's

repeated insistence that federal agencies curtail or expedite NEPA analyses and

Federal Defendants' subsequent violation of NEPA. AR:3-52-15039 to -15040

(pressuring Office of Surface Mining to "very quickly create an EA [environmental

assessment] that will support the mining plan"); AR:3-119-19329 to -19330

(foregoing an environmental impact statement (EIS) in response to pressure from

Signal Peak and noting that Signal Peak "understood" that if the "EA prove[d]

inadequate" it would "just end up prolonging the start of an EIS"). "When [a party]

'jump[s] the gun' or 'anticipate[s] a pro forma result' in permitting applications,"

as Signal Peak did here, "they become largely responsible for their own harm."

*Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 997 (8th Cir. 2011)

(quoting *Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002)).[3]

Furthermore, "[a] third party's potential financial damages from an

injunction generally do not outweigh potential harm to the environment."

---

[3] *Accord Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1187 (9th Cir. 2000) (discounting harm where federal agency and private party "acted at their peril"); *Swan View Coal. v. Weber*, 52 F. Supp. 3d 1160, 1161-62 (D. Mont. 2014) (discounting self-inflicted harm); *Diné Citizens Against Ruining Our Environment v. OSM* (*Diné CARE*), No. 12-cv-1275-JLK, 2015 WL 1593995, at *3 (D. Colo. Apr. 6, 2015) (holding "responsibility for . . . delay and expense" of vacatur "lies with Respondents [federal agency that violated NEPA] and not with Petitioners").

9

Pl.'s Resp. to Signal Peak's Mot. to Amend J.
MEIC v. OSM, 15-cv-106-DWM

*Mont. Wilderness Ass'n v. Fry*, 408 F. Supp. 2d 1032, 1034 (D. Mont. 2006). This is especially true where, as here, the impact is only temporary delay of an activity that may resume after remand. *League of Wilderness Defenders v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (holding that "irreparable environmental injuries outweigh the temporary delay intervenors face in receiving a part of the economic benefits of the project"). Mining will continue, in any case, in previously permitted portions of the mine until June 2019. (Doc. 71-1, ¶ 3.) Moreover, the purported economic benefits of continued mine operations themselves are, as the State of Montana concluded, only a brief and temporary boom that will inevitably be followed by a painful bust, causing "major and negative impacts over the long term" to "public sector fiscal conditions in Musseshell County." AR:3-54-15079. Additionally, Signal Peak's intention to **export** coal from the Bull Mountains is contrary to both the stated purpose of the original coal lease and congressional energy policy of ensuring national energy security. AR:4-4-21403; 30 U.S.C. § 1202(f); 42 U.S.C. § 13571. Exporting coal deprives the United States of non-renewable energy resources and places upward pressure on domestic coal and electricity prices. AR:3-9-11762.

Finally, the harm to the public from mining the coal will vastly exceed any benefits. The harm from the mine's greenhouse gas emissions alone significantly

Pl.'s Resp. to Signal Peak's Mot. to Amend J.
MEIC v. OSM, 15-cv-106-DWM

exceeds the economic benefits asserted by Signal Peak.[4] *Compare* Doc. 60 at 59

(noting social cost of carbon will cause damages annually between $277 million

and $2.5 billion), *with* Doc. 71-1, ¶ 9 (alleging $31 million in wages, $40 million

in "local business transactions," $22 million in annual tax revenue, and "[t]ens of

millions" in royalty payments).[5] Non-greenhouse gas pollution from coal trains and

coal combustion will cause additional severe and expensive harm to the public

(Doc. 42, ¶¶ 80-108) that also exceeds the monetary value of the coal (*id.* ¶ 105).

In light of similar considerations, federal courts have held that harm from

coal mining and coal combustion outweighs the impacts of temporary[6] delay in

operations pending lawful NEPA review. *Diné CARE*, 2015 WL 1593995, at *3;

*Sierra Club v. U.S. Dep't of Agric.*, 841 F. Supp. 2d 349, 358-60 (D.D.C. 2012)

---

[4] Only an unidentified fraction of Signal Peak's purported economic benefits of mining—those associated with mining in federal coal within the Amendment 3 permit boundary—will be temporarily impacted by the vacatur and injunction. (*See* Doc. 71-1, ¶ 9 (identifying economic benefits from entire mining operation).)

[5] In another context, FirstEnergy, a one-third owner of Signal Peak, has stated that the mine is worth **nothing**. Matthew Brown, *Signal Peak Owner Says the Mine Is Worth Nothing*, Billings Gazette (Feb. 24, 2016), *available at* http://billingsgazette.com/business/signal-peak-owner-says-the-mine-is-worth-nothing/article_018153a4-41e5-522b-a221-cd2d3aea4c13.html. FirstEnergy's statement is an admissible admission, Fed. R. Evid. 801(d)(2)(A), of which this Court may, and is requested to, take judicial notice, Fed. R. Evid. 201(b)(2), (c)(2).

[6] Pursuant to new U.S. Department of Interior policy, completion of an EIS on remand should be done relatively quickly. Sec. Or. 3355 (Aug. 31, 2017) (limiting EISs to "150 pages or 300 pages" and targeting completion "within 1 year").

Pl.'s Resp. to Signal Peak's Mot. to Amend J.
MEIC v. OSM, 15-cv-106-DWM

(harm to public health from coal plant pollution outweighed harm from delaying construction of coal plant pending completion of EIS); *Sierra Club*, 645 F.3d at 995-98 (harm to plaintiffs outweighed harm from delaying construction of coal plant); *see also High Country Conservation Advocates v. U.S. Forest Serv.*, 67 F. Supp. 3d 1262, 1264-65 (D. Colo. 2014) (vacating coal mine lease modification for violating NEPA).

In sum, the Court's order vacating Federal Defendants' decision was warranted in light of the evidence before the Court and was neither clear error nor manifestly unjust. There is no basis for the extraordinary remedy of amending this ruling under Rule 59(e).

### C.   This Court's Injunction, Abundantly Warranted by the Facts in the Record and the Facts of This Case, Was Neither Clear Error Nor Manifestly Unjust.

The Court's ruling enjoining mining operations in federal coal within the Amendment 3 permit boundary pending compliance with NEPA was also warranted and, therefore, no basis for relief under Rule 59(e). *See Bradford*, 2010 WL 11468411, at **2-4 (denying motion to amend where evidence showed that court's injunction was warranted).

A party seeking a permanent injunction must show:

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that considering the balance of

Pl.'s Resp. to Signal Peak's Mot. to Amend J.
MEIC v. OSM, 15-cv-106-DWM

hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010). A district

court, acting in equity, enjoys traditional discretion to fashion appropriate

injunctive relief, "unless a statute clearly provides otherwise." *United States v.*

*Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 496 (2001).

Regarding the first factor, continued mining in the sections of federal coal

will cause irreparable harm. "Environmental injury, by its nature, can seldom be

adequately remedied by money damages and is often permanent or at least of long

duration, i.e., irreparable." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545

(1987). Here, once the coal is mined, "the damage cannot be undone." *Ohio Valley*

*Envtl. Coal. v. U.S. Army Corps of Eng'rs*, 528 F. Supp. 2d 625, 631 (S.D.W. Va.

2007). Similarly, the deleterious air and water pollution from coal trains and coal

combustion causes widespread harm to the communities and environment of

Montana, and elsewhere. (Doc. 41-2, ¶¶ 8-19; Doc. 42, ¶¶ 80-119; Doc. 41-1, ¶¶ 9-

14; Decl. of Brian Moench, M.D., ¶¶ 2-24 (attached as Exhibit 1); Decl. of Dr.

James Hansen, at 1-14 (attached as Exhibit 2).) Indeed, the day this Court issued its

decision, a coal train derailed in western Montana, spilling coal into the Clark Fork River.[7]

More broadly, according to Dr. James Hansen, one of the world's most respected authorities on climate change, greenhouse gas emissions from combustion of this coal will aggravate the impacts of climate change. (Hansen Decl. at 1-2.) Among other things, this will "serve to intensify the type of wildfire that now afflicts Montana and other western states." (*Id.* at 1.) More distressing, any additional greenhouse gases emissions from the Bull Mountains Mine will push the global atmosphere closer to the brink of "disastrous and irreversible consequences." (*Id.* at 7.)

> [W]e are now well into the danger zone. Ours is now a period of significant atmospheric carbon overshoot. We must act with conviction and correct scientific information if we are to keep this period short—again, on pain of depriving our progeny of their right to a viable climate system that will be essential to minimal fulfillment of their life prospects. Allowing the Defendant-Intervenor to prepare and expand its Bull Mountain Coal Mine would be a major step in precisely the wrong direction, in light of the total coal reserves at stake in this litigation.

(*Id.* at 14; *see also* Doc. 41-1, ¶ 13.) The monetized cost of the harm from combustion of the coal at issue is staggering:

---

[7] Erickson, *Coal Train Derails Along Clark Fork River in Western Montana*, *supra.*

> If one totals the non-carbon damages and the damages from carbon pollution (the SCC [Social Cost of Carbon]), the total monetized damages of the coal [from the Bull Mountains Mine] would be $95-$350 per ton of coal, dwarfing the estimated $23 per ton market value of the coal.

(Decl. of Thomas Power, ¶¶ 6-7 (attached as Exhibit 3); *accord* Doc. 42, ¶ 105.)

Second, these harms are not capable of being remedied by monetary damages. MEIC has not sought monetary damages. (Doc. 1 at 25-26.) Nor could monetary damages "rectify the harm" that will occur if 176 million tons of coal are scraped from the heart of the Bull Mountains, shipped, and burned. *See Bradford*, 2010 WL 11468411, at *3 ("Once the projects are completed, monetary damages cannot rectify the harm.").

Third, the harm from continued mining of federal coal outweighs any harm to Signal Peak. As noted above, Signal Peak's alleged harm is significantly discounted because (1) it is self-inflicted; (2) it is temporary; (3) it is partial—some mining will continue through June 2019 in any event; (4) the mine has always been expected to eventually cause a harmful "bust" upon closure; (5) coal exports are contrary to national energy policy and energy security; and (5) the monetized harm from burning coal from the mine is significantly greater than the total economic benefits of the mine. (*See supra* Part II.B; *see also* Power Decl., ¶¶ 6-7 (harm from coal combustion 4-15 times greater than value of coal).)

Pl.'s Resp. to Signal Peak's Mot. to Amend J.
MEIC v. OSM, 15-cv-106-DWM

Fourth, enjoining unlawful mining operations is in the public interest. "[T]he public interest is best served when the law is followed." *Fry*, 408 F. Supp. 2d at 1038.[8] This is consistent with NEPA's mandate that until the agency issues its final decision "no action concerning the proposal shall be taken which would: (1) [h]ave an adverse environmental impact; or (2) [l]imit the choice of reasonable alternatives." 40 C.F.R. § 1506.1(a). Furthermore, given the widespread harmful impacts across the state of the Montana and beyond from coal trains and coal combustion, such as potential coal train derailments and intensification of climate change and devastating wildfires, cessation of expanded mining operations pending review is in the public interest. (*See* Doc. 41-2, ¶¶ 8-19; Doc. 42, ¶¶ 80-119; Moench Decl., ¶¶ 2-24; Hansen Decl., at 1-14 ("In my view special relief to the Defendant-Intervenor from this Court's injunction would be contrary to the fundamental interests of humanity in restoring planetary energy balance and to the interests of the people of Montana who yearn to breathe air that is not heavily laden with smoke and ash."). Again, when reduced to dollars and cents, the harms

---

[8] *See also Seattle Audubon Soc'y v. Evans*, 771 F. Supp. 2d 1081, 1096 (W.D. Wash. 1991) ("[H]aving government officials act in accordance with law" is a "public interest of the highest order."); *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (suspending projects pending lawful NEPA review is in public interest); *accord Sierra Club*, 645 F.3d at 997-98.

16

Pl.'s Resp. to Signal Peak's Mot. to Amend J.
MEIC v. OSM, 15-cv-106-DWM

from continued coal mining dramatically outweigh the benefits of such action. (Doc. 42, ¶ 105; Power Decl., ¶¶ 6-7.)

Finally, Signal Peak's suggestion that the Court should issue a partial injunction—allowing the coal company to "displace," i.e., mine, federal coal and then stockpile it, pending NEPA review—is wholly unavailing. Indeed, the suggestion once more displays Signal Peak's apparent belief that compliance with NEPA is an inconvenient technicality that should have no impact on its coal mining operations. AR:3-52-15039 to -15040 (pressuring BLM to curtail NEPA review); AR:3-119-19329 to -19330 (same). It is not. NEPA is "our basic national charter for protection of the environment." 40 C.F.R. § 1500.1(a). NEPA relies on public disclosure of information about environmental impacts to assure that the "most intelligent, optimally beneficial decision will ultimately be made." *Or. Natural Desert Ass'n v. BLM*, 625 F.3d 1092, 1099-100 (9th Cir. 2010) (quoting *Calvert Cliffs v. Atomic Energy Comm'n*, 449 F.2d 1109, 1114 (D.C. Cir. 1971)). A thorough review may, indeed, indicate that continued coal mining is not the "most intelligent, optimally beneficial decision."

In the meantime, Signal Peak must not be allowed to take actions— preparatory mining and tunneling in federal coal—that will limit alternatives and make the NEPA process a pro-forma exercise in support of a "predetermined outcome." *Fry*, 408 F. Supp. 2d at 1038; *Diné CARE*, 2015 WL 1593995, at *3

Pl.'s Resp. to Signal Peak's Mot. to Amend J.
MEIC v. OSM, 15-cv-106-DWM

(halting mining operations in mine expansion area to assure "NEPA compliance" would not become "a mere bureaucratic formality"); *Sierra Club v. Bosworth*, 510 F.3d 1016, 1033 (9th Cir. 2007) ("[A]llowing a potentially environmentally damaging program to proceed without an adequate record of decision runs contrary to the mandate of NEPA."); *see also* 40 C.F.R. § 1506.1(a) (actions may not proceed prior to completion of NEPA analysis if they will have "adverse" impacts or "[l]imit the choice of alternatives"); *Monsanto*, 561 U.S. at 145 (noting limitation of 40 C.F.R. § 1506.1(a)).[9] Signal Peak "ignore[s] the primary injury that would result from allowing the proposed activities to proceed, which is the difficulty of stopping a 'bureaucratic steamroller' once it is launched." *Colorado Wild v. U.S. Forest Serv.*, 523 F. Supp. 2d 1213, 1220-21 (D. Colo. 2007) (quoting *Mineta*, 302 F.3d at 1115 & n.7); *see Bradford*, 2010 WL 11468411, at *3 (declining to issue narrower injunction when NEPA violation "applie[d] to the entirety of all the project[]").

---

[9] Though § 1506.1 expressly refers to activities pending issuance of a "record of decision," the limitation necessarily also applies during the preparation of an EA. Otherwise, agencies would be allowed to permit projects to proceed prior to determining that an EIS (and therefore a record of decision) is required (i.e., during preparation of the EA). This would defeat the look-before-you-leap purpose of NEPA and the mandate of § 1506.1.

Pl.'s Resp. to Signal Peak's Mot. to Amend J.
MEIC v. OSM, 15-cv-106-DWM

In sum, this Court's issuance of its injunction was warranted in light of the four-factor injunction test and, therefore, neither clear error nor manifestly unjust. There is, thus, no basis for extraordinary relief under Rule 59(e).

**III.   Because Signal Peak's Motion to Amend Should Be Denied, Its Request for a Stay and Additional Remedies Briefing Should Also Be Denied.**

Signal Peak requests a stay pending a supplemental round of remedies briefing. (Doc. 70 at 8.) However, because relief is not warranted under Rule 59(e), the requests for the stay and additional remedies briefing should be denied.

Alternatively, if this Court allows supplemental briefing, MEIC requests leave to depose Signal Peak's declarant, Signal Peak Chief Executive Officer Bradley Hanson.

## CONCLUSION

Signal Peak's failure to timely request remedies briefing or present any remedies arguments during dispositive briefing cannot be cured via a motion to amend under Rule 59(e). Further, because the pervasive and long-lasting harm from the proposed coal mining operation greatly exceeds its fleeting and short-term benefits, this Court's order vacating Federal Defendant's decisions and enjoining operations pending compliance with NEPA was abundantly warranted and neither clear error nor manifestly unjust. Signal Peak's motion to amend this Court's

Pl.'s Resp. to Signal Peak's Mot. to Amend J.
MEIC v. OSM, 15-cv-106-DWM

judgment, as well as its requests for supplemental remedies briefing and a stay

pending such briefing, should be denied.

Respectfully submitted this 25th day of September 2017.

/s/ Shiloh Hernandez
Shiloh S. Hernandez
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 204-4861
hernandez@westernlaw.org

Laura H. King
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 204-4852
king@westernlaw.org

*Attorneys for Plaintiffs*

Pl.'s Resp. to Signal Peak's Mot. to Amend J.
MEIC v. OSM, 15-cv-106-DWM

## CERTIFICATE OF SERVICE

`     I, the undersigned counsel of record, hereby certify that on this 25th day of

September, 2017, I filed a copy of this document electronically through the

CM/ECF system, which caused all parties or counsel to be served by electronic

means as more fully reflected on the Notice of Electronic Filing.

/s/ Shiloh Hernandez
Shiloh Hernandez

## CERTIFICATE OF COMPLIANCE

I, the undersigned counsel of record, hereby certify that this brief is double-

spaced, has a typeface of 14 points or more, and contains 4,436 words, exclusive

caption, tables, and certificates. I relied on Microsoft Word to obtain the word

count.

/s/ Shiloh Hernandez
Shiloh Hernandez

21